UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Edward Drummond, | ) | C/A No.: 5:15-cv-04713-MGL-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Report and Recommendation |
| Sargent Blackwell, kitchen; Major Neal | ) | |
| Urch, Director; Asley McCann, Legal; | ) | |
| Det. Brock; Det. Reyes; Dr. McDonald, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging Defendants violated his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment. ECF No. 93. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[1] on July 25, 2016, advising Plaintiff of the importance of such a motion and of the need for him to file an adequate response. ECF No. 94. Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment on August 5, 2016. ECF No. 101. Additionally, this matter is before the court on Plaintiff's Request, filed on December 8, 2016, to have a heart test reviewed by a third-party doctor. *See* ECF No. 115. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because these Motions are dispositive, a Report and Recommendation is entered for the court's review.

I. Background

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

Plaintiff Edward Drummond is currently an inmate in SCDC's Allendale Correctional Institution ("ACI"). Before his convictions, Plaintiff was a pre-trial detainee at the Spartanburg County Detention Facility ("SCDF"), and Plaintiff's lawsuit arises out of the conditions of his confinement while housed at SCDF. ECF No. 1. Plaintiff alleges several causes of action under § 1983 in his Complaint, and in the issues section, he maintains his lawsuit concerns: "Drastic weight loss! violation of federal mail system/violation of federal mandated hot meal! Cr[uel] and unusual housing/drastic weight lost and col[o]n pain and blood in stool." *Id.* at 2.

Under "Claim 1," Plaintiff alleges that he was placed in the Behavioral Management Unit ("BMU") on or around May 15, 2015, and while housed there he was not allowed to send outgoing mail. *Id.* at 3. Plaintiff maintains that while housed there, he was involved in an active civil case, but due to the mail system violations, he could not meet deadlines, was rushed, and was denied an appeal. *Id.* Plaintiff seeks $250,000 for the violation of his liberties under Claim 1. *Id.* at 5.

Under "Claim 2," Plaintiff alleges he was denied a mattress, socks, and shoes. *Id.* at 3. Additionally, Plaintiff maintains that he lost a "great deal of weight," and it is painful to use the bathroom, he has blood in his stool, and is experiencing colon issues. *Id.* Plaintiff seeks $1,000,000 in damages after taxes and $100,000 in stock options under Claim 2. *Id.* at 5.

Under "Claim 3," Plaintiff alleges he was denied federally-mandated meals. *Id.* at 3. Additionally, Plaintiff alleges he has blisters on his feet from being denied socks and shoes and has had to sleep without a mattress for 21 days while he was in the "red zone." *Id.* at 3-4. Plaintiff maintains that he "would be without socks for at least 50 days" while in the yellow zone. *Id.* Additionally, Plaintiff argues four men are in an 8 x 12 foot cell which violates living

conditions and federal law. *Id.* at 4. Plaintiff seeks $250,000 in damages and $100,000 in stock options under Claim 3. *Id.* at 5.

Under "Claim 4," Plaintiff alleges that Defendant Brock and Defendant Reyes severely hurt his wrist on June 7, 2015. *Id.* Additionally, Plaintiff maintains they stripped him, placed a bag over his head and paraded him around in paper underwear. *Id.* Plaintiff alleges there is a video of the incident and that Defendants put the video on the internet. *Id.* Finally, Plaintiff alleges he was made to shower while wearing handcuffs. *Id.* Plaintiff seeks to have the charges against him dropped, classes on ethics and anger management given to Defendants with "completion papers" mailed to him, $5,000 put in inmates' accounts, $100,000 in damages, $1.450 million in damages, and $350,000 in stock options under Claim 4. *Id.* at 5.[2]

Since filing his action, Plaintiff moved to amend his Complaint to add causes of action for intentional infliction of emotional distress, defamation, and invasion of privacy. ECF No. 44. The court granted Plaintiff's Motion to Amend, ECF No. 44, on June 24, 2016, and instructed the clerk docket Plaintiff's motion as a Supplemental Pleading to Plaintiff's Complaint. *See* ECF No. 87 at 4. These allegations are part of Plaintiff's pending action.

II. Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

---

[2] Plaintiff amended his Complaint and added Dr. McDonald as a Defendant on or about April 11, 2016. ECF No. 32. Plaintiff's Motion was docketed as a Supplemental Pleading to his

of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

III. Analysis

    A.    Defendants' Motion for Summary Judgment

In their Motion, Defendants argue "Plaintiff has not stated a constitutional deprivation sufficient for recovery under 42 U.S.C. § 1983." ECF No. 93-1 at 3. Plaintiff has submitted a Response to Defendants' Motion, ECF No. 101, as well as several "additional attachments" to this main document. ECF Nos. 101, 103, 107, 108, 109, 111. The undersigned has reviewed the parties' arguments and submissions and will address each in turn.

    1.    Housing/Classification

Defendants argue that to the extent Plaintiff makes a § 1983 claim concerning his housing, this cause of action should be dismissed because there is no liberty interest created in custodial classifications. ECF No. 93-1 at 5. Further, Defendants maintain "as the records indicate, Plaintiff was initially housed in Pods 3 and 4, and was only housed in Pod 5 due to his repeated failure to abide by institutional rules, as well as the nature of his pending charges and for the safety and security of other inmates and the institution." *Id.* On this issue, the undersigned

---

Complaint. *See* ECF No. 40; ECF No. 1-5. However, since filing this Motion and supplementing

recommends denying Defendants summary judgment and instructing the parties re-brief the housing/segregation issue in light of *Dilworth v. Adams*, 841 F.3d 246 (4th Cir. 2016).[3]

In *Dilworth*, the Fourth Circuit Court of Appeals ("the Fourth Circuit") held that a pretrial detainee was entitled to procedural due process before being subjected to disciplinary segregation as punishment for two disciplinary infractions. 841 F.3d at 251. There, Dilworth spent 85 days in disciplinary segregation and "was not afforded a hearing in connection with either of his placements in disciplinary segregation." *Id.* at 248. Citing to the Supreme Court case of *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995), the Fourth Circuit emphasized that Dilworth had not been convicted of a crime when he was segregated. *Id.* at 251. Further, the court reasoned that Dilworth's placement in disciplinary segregation implicated a protected liberty interest and warranted procedural safeguards. *Id.* at 251.

After determining that disciplinary segregation of a pretrial detainee, intended as a penalty for disciplinary infractions, implicates a protected liberty interest, the Fourth Circuit considered whether the procedures afforded to *Dilworth* satisfied Fourteenth Amendment requirements. *Id.* at 253. There, those defendants conceded that the due process afforded Dilworth failed to comply with the detention center's written policies and with the mandates of *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). *Id.* at 254. Ultimately, the Fourth Circuit held Dilworth was denied Fourteenth Amendment due process as a matter of law and remanded "resolution of Dilworth's damages claim, consistent with this opinion." *Id.* at 255.

---

his Complaint, Dr. McDonald has been dismissed as a party to this action. *See* ECF Nos. 63, 84.
[3] The undersigned notes that Defendants filed their Summary Judgment Motion on July 22, 2016, while the *Dilworth* case was published November 7, 2016.

Following directives of *Dilworth*, the undersigned finds that contrary to Defendants' assertions, Plaintiff does have a protected liberty interest in non-disciplinary housing. However, the undersigned is unable to determine as a matter of law what due process was afforded here. Defendants have attached Plaintiff's disciplinary records to Plaintiff's companion case, C/A 5:15-cv-04285-MGL-KDW, ECF No. 150-5. It appears Plaintiff was afforded Notice of a Disciplinary Hearing on certain charges against him on May 29, 2015. *Id.* at 20. However, Defendants do not analyze whether Plaintiff was afforded all required due process or provide the court with a timeline of Plaintiff's disciplinary segregation in conjunction with the disciplinary process. Therefore, the court is unable to determine whether Plaintiff was afforded necessary Fourteenth Amendment due process as a matter of law. Accordingly, the undersigned recommends the district court deny summary judgment at this time and allow Defendants to submit supplemental briefing of Plaintiff's due-process allegations in light of the *Dilworth* opinion. Moreover, based on this recommendation, the undersigned recommends denying Defendants summary judgment on Plaintiff's conditions-of-confinement claims because those allegations relate to the environment of SCDF's disciplinary housing. Here, Defendants analyze those allegations under an "equal protection" and "due-process" analysis.

2.    Access to Courts

Defendants argue that Plaintiff's purported § 1983 claim concerning denial of access to courts must fail because "he fails to show that he has missed any court deadlines or suffered any injury as a result thereof." ECF No. 93-1 at 5-6.

With regards to Plaintiff's allegations of denial of access to courts concerning his legal claims, the undersigned finds that Plaintiff has failed to make a prima facie case. The right of

access to the courts is the right to bring to court a grievance that the inmate wished to present and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 350–53 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must demonstrate with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316-17 (4th Cir. 1996); *see also White v. White*, 886 F.2d 721, 723–24 (4th Cir. 1989). Actual injury requires that the inmate demonstrate that his "nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353–55. The *Lewis* Court reasoned that the requirement that an inmate "show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Id.* at 349.

Plaintiff maintains that his civil suit, "#5-15-cv-02147-MGL," was denied due to his placement in BMU. ECF No. 1 at 3. Additionally, Plaintiff alleges "he could not make deadline and [was] rushed and was denied [an] ap[p]eal!" *Id.* However, Plaintiff did not present any evidence that he suffered specific injuries as a result of his alleged denial of access to court. In his Response to the Summary Judgment Motion and additional attachments, Plaintiff submitted: letters from attorneys, a motion, court correspondences, several "Inmate Requests," several "Grievance Form/Medical" forms, a disciplinary hearing record, medical records, a proposed settlement in the *T.R. v. South Carolina Department of Corrections* action, Requests to Staff Members, and Screen Shots from Sentryx with event narratives. *See* ECF Nos. 101, 103, 107, 108, 109, 111.

Moreover, the undersigned takes judicial notice and has reviewed the documents filed in Plaintiff's prior action, civil action number 5:15-cv-02147, which was dismissed on June 30, 2015. *Drummond v. Spartanburg Cty. Det. Ctr.*, No. 5:15-CV-02147-MGL, 2015 WL 4076731, at *1 (D.S.C. June 30, 2015). In the Order of Dismissal, the District Court advised Plaintiff of his right to appeal within thirty days. *See* ECF No. 17 in C/A 5:15-CV-02147-MGL. Thereafter, Plaintiff sent the court three letters, including one docketed on July 23, 2015. *See* ECF Nos. 20, 23, 24 in C/A 5:15-CV-02147-MGL. It appears to the court that Plaintiff did not timely file a Notice of Appeal in his prior civil action, though not because Defendants or others were preventing him from sending legal documents to the court. Rather, the evidence before the court indicates that Plaintiff has filed hundreds of grievances and mailed multiple letters and motions to the court. Plaintiff has simply not demonstrated that he was unable to file an appeal because of any action or inaction on Defendants' part. Accordingly, Plaintiff has failed to demonstrate that he was injured as a result of Defendants' alleged non-cooperation in completing or assisting his efforts to pursue a legal claim. *Lewis*, 518 U.S. at 353–55.  Therefore, the undersigned recommends granting Defendants summary judgment on Plaintiff's claim for denial of access to courts.

### 3. Deliberate Indifference to Medical Needs

Defendants argue Plaintiff's § 1983 medical indifference claim fails because the named Defendants were not charged with affording Plaintiff medical care. ECF No. 93-1 at 6-7. Additionally, Defendants argue medical records demonstrate that "Plaintiff's complaints were timely addressed by both the SCDF Medical Director, who used his medical judgment and

prescribed appropriate medication to treat Plaintiff's medical conditions, as well as the SCDF nursing staff who administered those medications as prescribed." *Id.* at 7.

The undersigned recommends that Plaintiff's purported cause of action for medical indifference be dismissed for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. *See* Rule 8, Fed.R. Civ. Proc. (requiring that complaints shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (finding the purpose behind Rule 8 is to give the defendant fair notice of the claims and the grounds upon which it rests, and holding that the plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ."). Though Plaintiff alleges he is experiencing health issues related to his diet, Plaintiff does not allege that Defendants have acted or are acting with deliberate indifference toward his medical needs. *See* ECF No. 1. Additionally, though Plaintiff amended his Complaint and added Dr. McDonald as a Defendant on or about April 11, 2016, ECF No. 32, Dr. McDonald has been dismissed as a party to this action. *See* ECF Nos. 63, 84. Therefore, the undersigned recommends dismissing Plaintiff's purported medical indifference claim for failure to comply with Rule 8 pleading requirements.

However, to the extent the district court finds Plaintiff meets Rule 8 pleading requirements, the undersigned still recommends Plaintiff's purported medical indifference claim be dismissed. To prevent the entry of summary judgment on a cause of action for deliberate indifference to medical needs, a plaintiff must present evidence sufficient to create a genuine issue of fact that the defendant was deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 832-35 (1994); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Estelle v.*

*Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 846. An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[deliberate indifference] . . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted). A medical condition is also serious if a delay in treatment causes a lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

In his Complaint, Plaintiff alleges that because of the content of his diet he has lost a large amount of weight, has problems going to the bathroom, colon issues, and blood in his stool. ECF No. 1 at 3. When listing out his medical conditions, Plaintiff indicated that an officer had "allerted (sic) medical" about these issues. *Id.* Plaintiff also alleges that on June 7, 2015, officers severely hurt his wrists. *Id.* at 4. The undersigned finds that Plaintiff has not offered any evidence that would support a finding that Defendants intentionally or recklessly disregarded Plaintiff's medical needs or delayed Plaintiff's access to medical care.

In support of their Motion for Summary Judgment, Defendants attached the affidavit of

Defendant Urch, the Director of SCDF. *See* ECF No. 93-2. Defendant Urch attests that Plaintiff was recently housed at SCDF from March of 2015 to March of 2016, while he was awaiting trial on criminal charges. *Id.* ¶ 3. Plaintiff's medical records are included as an attachment to Defendant Urch's affidavit, and these records indicate Plaintiff was seen by a nurse on April 6, 2015, and April 21, 2015. ECF No. 152-1 at 17, 20. Additionally, Plaintiff was admitted to Spartanburg Regional Medical Center on April 21, 2015 as an outpatient and was admitted to Spartanburg Regional Emergency Center on June 28, 2015. ECF No. 152-2 at 8; 152-5 at 14. A July 20, 2015 Radiology report indicates that Plaintiff's neck and spine were examined with the following findings: "There is a mild reversal normal cervical curvature. Alignment is otherwise unremarkable. No fracture, vertebral compression or bony abnormality. No disc space narrowing. No foraminal narrowing. No prevertebral soft tissue swelling." ECF No. 152-6 at 14. These medical records also indicate Plaintiff was prescribed several medications and had at least monthly appointments for his mental health during his time as a pre-trial detainee. *See* ECF No. 152-3. Additionally, Plaintiff regularly saw a nurse for medical treatment during his time as a pre-trial detainee. *See* ECF No. 152-4; 152-5.

Although Plaintiff may disagree with the amount of treatment he received or may object to the care that the medical staff gave him, such allegations do not constitute a constitutional deprivation. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994) (finding that although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary). To the extent Plaintiff argues that the medical staff subjectively failed to treat or alleviate his "extreme pain and suffering," such a claim is more akin to a claim of neglect or malpractice and does not meet the standard for a plausible claim under § 1983.

*Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). As the *Wright* court articulated:

> Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983. The standard for § 1983 liability is deliberate indifference to serious medical needs. Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.

*Id.* (internal citations omitted). The undersigned finds that the record does not contain facts that demonstrate Defendants knew of and disregarded Plaintiff's serious medical needs. Rather, the record demonstrates that SCDF staff regularly ensured that Plaintiff's medical needs were met and that Plaintiff was regularly assessed by medical personnel either within the facility or at a hospital. Thus, Plaintiff has failed to demonstrate he is at risk based on his medical state. Therefore, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's purported medical indifference claims.[4]

### 4. Qualified Immunity

Defendants argue they are entitled to dismissal of this case because they are shielded by qualified immunity. ECF No. 93-1 at 11. Though Defendants deny that "any of the policies, procedures, and practices complained of by Plaintiff give rise to a constitutional deprivation," they maintain that "qualified immunity insulates [them] from liability in this suit. *Id.*

The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[4] None of the named Defendants are medical personnel. Furthermore, Plaintiff fails to allege any facts in the Complaint concerning medical care that relate to the Defendants. Consequently,

constitutional rights of which a reasonable person would have known.  *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009).  The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case.  *Id.* at 236.  In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition."  *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit."  *Id.* (citations and internal quotation omitted).

The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion as they relate to denial of access-to-courts and medical-indifference allegations only. Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, as it relates to denial of access-to-courts and medical-

---

Plaintiff has failed to provide any facts that would show the Defendants had actual knowledge of his serious medical needs or were deliberately indifferent to them.

indifference allegations, the undersigned recommends that these Defendants be granted qualified immunity.

### 5. Respondeat Superior

Defendants argue that Defendant Urch cannot be held liable under a theory of respondeat superior. ECF No. 93-1 at 12. Specifically, Defendants maintain that "[t]o the extent that Plaintiff is alleging that Defendant Urch is subject to supervisory liability, such allegations fail as a matter of law." *Id.*

Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior,* but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn,* 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted), *overruled in part on other grounds by Farmer,* 511 U.S. at 837. To successfully pursue such a theory, Plaintiff must demonstrate that he faced a pervasive and unreasonable risk of harm from a specified source, and that the supervisor's corrective inaction amounted to deliberate indifference or tacit authorization of the offensive practices. *Id.; see also Slakan v. Porter,* 737 F.2d 368, 373 (4th Cir. 1984).

Plaintiff's Complaint alleges that some Defendants acted with deliberate indifference or subjected him to cruel and unusual punishment in violation of his Constitutional rights. However, Plaintiff failed to show facts that establish any of the Defendants acted with indifference or malice. Therefore, the undersigned finds that Plaintiff has failed to establish a causal link between any action or inaction on the part of the SCDF personnel and Defendant Urch. To the extent Plaintiff attempts to rely on the doctrine of supervisory liability to hold

Defendant Urch liable on any of his claims, the undersigned recommends that Defendant Urch be granted summary judgment.

6.       State Law Causes of Action

As previously indicated, Plaintiff amended his Complaint to allege state-law causes of action for intentional infliction of emotional distress, defamation, and invasion of privacy. *See* ECF Nos. 44, 87. If the court accepts this R&R, Plaintiff will still have pending claims concerning denial of due process which is within the court's original jurisdiction. Therefore, the undersigned recommends denying Defendants summary judgment on Plaintiff's state-law causes of action with leave to re-visit these issues upon Defendants' re-briefing.

B.       Plaintiff's Motion for Review of Heart Test, ECF No. 115

On December 8, 2016, Plaintiff filed a Motion to have a heart test performed by Spartanburg Regional ER reviewed by a third-party doctor. ECF No. 115. In his Motion, Plaintiff asserts that the diagnosis made by Spartanburg Regional that he "had no problems or issues with [his] heart" was a lie. *See id.* at 1. Plaintiff also requests to have Spartanburg Regional added as a defendant to this action, and moves to have a doctor look at the June 28, 2015 heart exam. *Id.*

Plaintiff's request to add Spartanburg Regional as a defendant is denied because the time to make amendments to his Complaint ended on May 15, 2016. *See* ECF No. 34. Other than this amendment, Plaintiff appears to be requesting that his test results be reviewed in an attempt to bolster his claims of medical indifference or, alternatively, Plaintiff could be requesting injunctive relief. Plaintiff's request that a third-party review test results, to the extent it relates to discovery, is denied. Discovery in this matter ended on June 13, 2016. *See* ECF No. 34. To the

extent Plaintiff is requesting injunctive relief by seeking the court's involvement in procuring review of his medical records, the undersigned recommends Plaintiff's request for a third-party doctor's examination be denied.

"[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal citations and quotation marks omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Smith v. Ozmint*, 444 F. Supp. 2d at 504. A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly. The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

An analysis of the *Winter* factors reveals that Plaintiff's motion should be denied. First, Plaintiff has not made a clear showing that he is likely to succeed on the merits of his Complaint. Second, in his Complaint, Plaintiff does not allege facts that indicate Defendants are acting with deliberate indifference to his medical needs. Further, facts do not indicate that Plaintiff's health is in imminent danger, and Plaintiff has not offered any evidence to support his claims. Finally, Plaintiff has not shown that a preliminary injunction is in the public interest. Accordingly, it is recommended that Plaintiff's Motion, ECF No. 115, be denied.

IV. Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 93, be granted at to Plaintiff's claims for denial of access to courts and medical indifference and denied as to Plaintiff's claims related to due process. The undersigned recommends that Plaintiff's Motion for Injunctive Relief, ECF No. 115, be denied. The undersigned further recommends that Defendants be provided an opportunity to submit additional briefing on the housing/classification and conditions of confinement claims in light of the recent Fourth Circuit decision of *Dilworth v. Adams*, 841 F.3d 246.[5]

IT IS SO RECOMMENDED.

December 27, 2016                                       Kaymani D. West
Florence, South Carolina                                United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

---

[5] Plaintiff has three other pending Motions before the court. *See* ECF Nos. 102, 105, 106. In two Motions, ECF Nos. 102 and 105, Plaintiff seeks to amend his Complaint. Plaintiff's Motions to Amend, ECF Nos. 102 and 105, are denied. The time for an amendment is over, *see* ECF No. 34, and when Plaintiff sought his amendments Defendants had already filed their Motion for Summary Judgment. In his final pending Motion, Plaintiff seeks to amend his Complaint and amend his response to summary judgment. Plaintiff's motion, ECF No. 106, is denied to the extent Plaintiff seeks to amend his Complaint and granted to the extent Plaintiff seeks to amend his Response to Summary Judgment. The undersigned has considered Plaintiff's Amended Response in addition to Plaintiff's other Responses to Summary Judgment when ruling on Defendants' Motion for Summary Judgment.