UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| Edward Drummond, | ) | C/A No.: 5:15-cv-04713-MGL-KDW |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Report and Recommendation |
| Sargent Blackwell, kitchen; Major Neal Urch, Director; Asley McCann, Legal; Det. Brock; Det. Reyes; Dr. McDonald, | ) | |
| Defendants. | ) | |

Plaintiff, an inmate with the South Carolina Department of Corrections ("SCDC"), filed this 42 U.S.C. § 1983 action alleging Defendants violated his constitutional rights. This matter is before the court on Defendants' Amended Motion for Summary Judgment. ECF No. 138. As Plaintiff is proceeding pro se, the court entered a *Roseboro* order[1] on April 4, 2017, advising Plaintiff of the importance of such a motion and of the need for him to file an adequate response. ECF No. 140. Plaintiff filed a Response in Opposition to Defendants' Motion for Summary Judgment on April 19, 2017. ECF No. 144. Plaintiff also filed Motions for Summary Judgment on January 12, 2017, and April 5, 2017. ECF Nos. 121, 142. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because these Motions are dispositive, a Report and Recommendation ("R&R") is entered for the court's review.

   I.   Procedural History

---

[1] The court entered a "*Roseboro* order" in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring that the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

Previously, on December 27, 2016, the undersigned recommended granting Defendants' Motion for Summary Judgment concerning Plaintiff's claims for denial of access to courts and medical indifference. *See* ECF No. 116. However, in the R&R the undersigned recommended denying Defendants summary judgment on Plaintiff's due-process claims and allowing Defendants an opportunity to submit additional briefing on the housing/classification and conditions of confinement claims in light of the recent Fourth Circuit decision of *Dilworth v. Adams*, 841 F.3d 246 (4th Cir. 2016). On January 25, 2017, the District Court adopted the R&R over Plaintiff's objections. *See* ECF No. 127. Defendants then filed an Amended Motion for Summary Judgment in compliance with the undersigned's January 30, 2017 order. *See* ECF No. 131. This R&R is limited to addressing Plaintiff's causes of action concerning housing/classification and conditions of confinement claims.

II. Background[2]

Plaintiff Edward Drummond is currently an inmate in SCDC's Allendale Correctional Institution ("ACI"). Before his convictions, Plaintiff was a pre-trial detainee at the Spartanburg County Detention Facility ("SCDF"), and Plaintiff's lawsuit arises out of the conditions of his confinement while housed at SCDF. ECF No. 1. Plaintiff alleges several causes of action under § 1983 in his Complaint, and in the issues section, he maintains his lawsuit concerns: "Drastic weight loss! violation of federal mail system/violation of federal mandated hot meal! Cr[uel] and unusual housing/drastic weight lost and col[o]n pain and blood in stool." *Id.* at 2.

Under "Claim 1," Plaintiff alleges that he was placed in the Behavioral Management Unit

---

[2] As indicated above, Plaintiff's causes of action for medical indifference and denial of access to court were dismissed by the District Court. However, out of an abundance of caution, the undersigned is including all Complaint allegations in this section.

("BMU") on or around May 15, 2015, and while housed there he was not allowed to send outgoing mail. *Id.* at 3. Plaintiff maintains that while housed there, he was involved in an active civil case, but due to the mail system violations, he could not meet deadlines, was rushed, and was denied an appeal. *Id.* Plaintiff seeks $250,000 for the violation of his liberties under Claim 1. *Id.* at 5.

Under "Claim 2," Plaintiff alleges he was denied a mattress, socks, and shoes. *Id.* at 3. Additionally, Plaintiff maintains that he lost a "great deal of weight," and it is painful to use the bathroom, he has blood in his stool, and is experiencing colon issues. *Id.* Plaintiff seeks $1,000,000 in damages after taxes and $100,000 in stock options under Claim 2. *Id.* at 5.

Under "Claim 3," Plaintiff alleges he was denied federally-mandated meals. *Id.* at 3. Additionally, Plaintiff alleges he has blisters on his feet from being denied socks and shoes and has had to sleep without a mattress for 21 days while he was in the "red zone." *Id.* at 3-4. Plaintiff maintains that he "would be without socks for at least 50 days" while in the yellow zone. *Id.* Additionally, Plaintiff argues four men are in an 8 x 12 foot cell which violates living conditions and federal law. *Id.* at 4. Plaintiff seeks $250,000 in damages and $100,000 in stock options under Claim 3. *Id.* at 5.

Under "Claim 4," Plaintiff alleges that Defendant Brock and Defendant Reyes severely hurt his wrist on June 7, 2015. *Id.* Additionally, Plaintiff maintains they stripped him, placed a bag over his head and paraded him around in paper underwear. *Id.* Plaintiff alleges there is a video of the incident and that Defendants put the video on the internet. *Id.* Finally, Plaintiff alleges he was made to shower while wearing handcuffs. *Id.* Plaintiff seeks to have the charges against him dropped, classes on ethics and anger management given to Defendants with

"completion papers" mailed to him, $5,000 put in inmates' accounts, $100,000 in damages, $1.450 million in damages, and $350,000 in stock options under Claim 4. *Id.* at 5.[3]

Since filing his action, Plaintiff moved to amend his Complaint to add causes of action for intentional infliction of emotional distress, defamation, and invasion of privacy. ECF No. 44. The court granted Plaintiff's Motion to Amend, ECF No. 44, on June 24, 2016, and instructed the clerk docket Plaintiff's motion as a Supplemental Pleading to Plaintiff's Complaint. *See* ECF No. 87 at 4. These allegations are part of Plaintiff's pending action.

III. Standard of Review

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

IV. Analysis

---

[3] Plaintiff amended his Complaint and added Dr. McDonald as a Defendant on or about April 11, 2016. ECF No. 32. Plaintiff's Motion was docketed as a Supplemental Pleading to his

4

A. Defendants' Motion for Summary Judgment

In their Motion, Defendants argue "there are no genuine issues as to any material fact and [] they are entitled to judgment as a matter of law." ECF No. 138 at 1. Additionally, Defendants argue that Plaintiff has not stated claims sufficient for recovery under 42 U.S.C. § 1983. ECF No. 138-1 at 1. Defendants specifically address Plaintiff's claims concerning housing/classification and conditions of confinement. *See id.* The undersigned has reviewed the parties' arguments and submissions and will address each in turn.

1. Housing/Classification

Initially, Defendants recognize that in *Dilworth*, the Fourth Circuit Court of Appeals held that "pretrial detainees are entitled to procedural due process before being subjected to disciplinary segregation as punishment for disciplinary infractions." ECF No. 138-1 at 1. Defendants argue that here, unlike the facts in the *Dilworth* case, "Plaintiff was afforded procedural due process [] before being placed in the Behavioral Management Unit ("BMU") at the Spartanburg County Detention Facility ("SCDF")." *Id.* at 2.

Previously, the undersigned relied on the case of *Dilworth v. Adams*, for the proposition that a pretrial detainee is entitled to procedural due process before being subjected to disciplinary segregation as punishment for two disciplinary infractions. 841 F.3d 246, 251 (4th Cir. 2016). There, Dilworth spent 85 days in disciplinary segregation and "was not afforded a hearing in connection with either of his placements in disciplinary segregation." *Id.* at 248. Citing to the Supreme Court case of *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995), the Fourth Circuit emphasized that Dilworth had not been convicted of a crime when he was segregated. *Id.* at 251.

---

Complaint. *See* ECF No. 40; ECF No. 1-5. However, since filing this Motion and supplementing

Further, the court reasoned that Dilworth's placement in disciplinary segregation implicated a protected liberty interest and warranted procedural safeguards. *Id.* at 251.

After determining that disciplinary segregation of a pretrial detainee, intended as a penalty for disciplinary infractions, implicates a protected liberty interest, the Fourth Circuit considered whether the procedures afforded to Dilworth satisfied Fourteenth Amendment requirements. *Id.* at 253. There, those defendants conceded that the due process afforded Dilworth failed to comply with the detention center's written policies and with the mandates of *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). *Id.* at 254. Ultimately, the Fourth Circuit held Dilworth was denied Fourteenth Amendment due process as a matter of law and remanded "resolution of Dilworth's damages claim, consistent with this opinion." *Id.* at 255.

Therefore, under *Dilworth*, Plaintiff has a protected liberty interest in non-disciplinary housing and is entitled to certain due process protections in accordance with *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974). In *Wolff*, the Supreme Court held that "due process required written notice to the inmate of the charges, an opportunity for the inmate to call witnesses and present documentary evidence in his defense, and a written statement by the fact finders of the evidence relied upon and the reasons for the disciplinary action." *Baker v. Lyles*, 904 F.2d 925, 929 (4th Cir. 1990). In *Dilworth*, the Fourth Circuit Court of Appeals held that "the core component of due process in the prison discipline context is the right to a hearing." 841 F3d at 254. Further, the *Dilworth* Court found a disciplinary hearing where the pretrial detainee may contest the charges against him "is the minimal requirement of the *Wolff* process." *Id.*

---

his Complaint, Dr. McDonald has been dismissed as a party to this action. *See* ECF Nos. 63, 84.

Defendants argue that Plaintiff was afforded the requisite due process, and in support of their Motion for Summary Judgment, Defendants have attached the affidavit of Robert Duclos detailing the due process afforded to Plaintiff during his time as a pretrial detainee. *See* ECF Nos. 138-1; 138-2. Robert Duclos is a Sergeant with the Spartanburg County Sheriff's Office and the Support Services Supervisor at SCDF with the responsibility for overseeing the disciplinary system of the pretrial detainees and others incarcerated at the SCDF. *See* ECF No. 138-2 ¶¶ 1-2. Duclos attests that he has reviewed Plaintiff's SCDF records from March 23, 2015 to March 22, 2016, and he includes a copy of Plaintiff's cell assignments as an attachment to his affidavit. *Id.* ¶ 3; ECF No. 138-3.

Duclos notes that the computerized copy of Plaintiff's SCDF cell assignments indicate that Plaintiff was housed primarily in general population Pods from March 23, 2015 until May 29, 2015. *Id.* Additionally, Duclos attests that "on May 21, 2015, Plaintiff was charged with a violation of Rule Z556, Threatening a Deputy, Staff Member, Public Official and/or their Family, a Class Three offense pursuant to SCDF Policy 501 (Inmate Disciplinary System)." *Id.* ¶ 4. For this offense, Duclos avers that Plaintiff was provided notice of the disciplinary hearing on the charge on May 29, 2015. *Id.* A Notice of Disciplinary Hearing is attached as an exhibit attached to his affidavit, and the Notice indicates that Deputy Higgins delivered the notice to Plaintiff on May 29, 2015, as Duclos attests. ECF No. 138-4.

Concerning the required hearing on the matter, Duclos represents that a hearing for the Rule Z556 violation was scheduled for May 30, 2015, but "upon being notified of the hearing, [Plaintiff] plead[ed] not guilty and waived his right to wait 24 hours for the hearing." *Id.* The Disciplinary Notice documents Plaintiff's desire to "waive the 24 hour hearing notice and have

7

[his] hearing [the day he received notice]" as evidenced by Plaintiff's signature and Deputy Higgins' signature. ECF No. 138-4. Plaintiff's signature is also documented on the Disciplinary Hearing Form next to his plea of "not guilty." *Id.* at 3. Therefore, at Plaintiff's request, the hearing took place on May 29, 2015. *Id.* The Disciplinary Hearing Record indicates that Plaintiff was "given [the] opportunity [] to place the names of any witnesses [he] wish[ed] to testify [on his] behalf on the form [he] signed." *Id*. The Disciplinary Hearing Record also indicates that Plaintiff was able to "present any evidence or documentation" on his behalf at the hearing. *Id.* Additionally, Plaintiff was advised of the possible six sanctions that may be taken against him if he was found guilty. *Id.*

Duclos attests that the hearing officer, Deputy Higgins, found Plaintiff guilty of threatening Deputy McCann, and recommended that Plaintiff be placed in the red zone of Pod 5, which houses the BMU, for three (3) days. ECF No. 138-2 ¶ 4. Higgins documented his findings on May 29, 2015 in the following narrative:

> On May 21, 2015 [Plaintiff] was charged with violation of Z 556 Threatening a Deputy or Staff Member. [Plaintiff] was notified of this incident on May 29, 2015 and plead[ed] not guilty. [Plaintiff] waived his right to wait twenty four hours and had a hearing with Corporal Thomas as the witness today. [Plaintiff] reported that Ms. McCann had refused to send his legal mail out of the facility, and accused her of being unfair and state that "A divided house will not stand." [Plaintiff] wrote Ms. McCann and warned her to "work fast to prevent the storm that will be coming". [Plaintiff] was advised that any statement made with the indication of probable evil to come, or something that gives indication of harm is considered a "threat". [Plaintiff] was advised by this hearing Officer not to write Ms. McCann directly for any reason, only to send his legal material to the legal department without naming any individual.
>
> I recommend [Plaintiff] be placed in the red zone of the BMU for 3 days.

ECF No. 138-4. According to Duclos' affidavit, Plaintiff was rehoused in Pod 5 that same day.[4]

In his Response, Plaintiff indicates that Higgins only requested he be placed in BMU for three days because in Higgins' opinion Plaintiff did not make a "true" threat. ECF No. 143 at 2. Additionally, Plaintiff represents that Higgins told him to request an appeal under SCDF Policy 301. *Id.* However, Plaintiff alleges that "Major Neal Urch order[ed] Dep Brock to prevent [him] from writing him and a[n] appeal." *Id.* Therefore, it now appears that Plaintiff's main allegation concerning deprivation of due process is his allegation that Defendants prevented him from filing an appeal of Higgins' findings. *See id.*

The undersigned finds that *Wolff* does not require pre-trial detainees be afforded an appeal of disciplinary findings. Rather, minimal due process under *Wolff* requires a pre-trial detainee receive a hearing prior to receiving punishment. *Dilworth*, 841 F.3d at 254 ("But the hearing itself, at which a pretrial detainee like Dilworth may contest whether he has in fact violated a disciplinary rule before he is punished, is the minimal requirement of the *Wolff* process."). Therefore, the undersigned finds that the evidence presented, as well as Plaintiff's concessions in his Response, demonstrate that in this instance Plaintiff was afforded the requisite due process—a contested hearing on the disciplinary charge. Accordingly, the undersigned recommends the district court grant Defendants' Motion for Summary Judgment concerning Plaintiff's cause of action for deprivation of his due process rights under the Fourteenth Amendment.

    2.    Conditions of Confinement

---

[4] Although Defendants do not indicate when Plaintiff received written notice of hearing officer Higgins' decision, Plaintiff includes the above narrative in his Response to Defendants' Motion

Defendants maintain that though "Plaintiff makes bare allegations of harm from being housed in the BMU, he has provided no proof of any damages." ECF No. 138-1 at 5. Defendants represent that Plaintiff's claim should be "analyzed under the due process clause because he was a pretrial detainee at the time of the claimed incidents and thus not subject to punishment of any kind." *Id.* at 4. Further, Defendants argue that because "Plaintiff was afforded procedural due process by way of a disciplinary hearing prior to being placed in the BMU, and he can show no harm by being housed therein. . . Defendants are entitled to summary judgment on his housing/classification and conditions of confinement claims." *Id.* at 6. In their first Motion for Summary Judgment Defendants addressed Plaintiff's conditions-of-confinement claims, *see* ECF No. 93-1 at 3-5; 9-10, and the undersigned will rely on those arguments as well as the present arguments in assessing these claims.

In the Supreme Court case of *Bell v. Wolfish*, the Court advised that conditions-of-confinement claims for pretrial detainees are evaluated under the due-process clause of the Fourteenth Amendment rather than under the cruel and unusual punishment assessment of the Eighth Amendment. 441 U.S. 520, 535-36 n.16 (1979). However, as Defendants point out, the standards applied in Eighth Amendment conditions-of-confinement cases are essentially the same as those in cases arising under the Fourteenth Amendment for pretrial detainees. *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988); *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001). For a pretrial detainee to state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' "

---

for Summary Judgment. Therefore, it appears that Plaintiff was also given written notice of the

*Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. *Id.* at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004). Finally, a plaintiff asserting unconstitutional conditions of confinement must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. *See Strickler*, 989 F.2d at 1380-81.

In his Complaint, Plaintiff maintains that he was denied shoes, socks, federally-mandated hot meals, and a mattress. ECF No. 1 at 3-4. Additionally, Plaintiff alleges that four men are living in 8x12 feet cells which Plaintiff maintains is a violation of federal law. *Id.* at 4. Further, Plaintiff alleges he has been subjected to cruel and unusual punishment by being stripped and bullied. *Id.* Plaintiff also alleges he was made to shower while wearing handcuffs. *Id.* at 5. The undersigned will address each allegation in turn.

    a.)    Adequate Food[5]

The law requires that "inmates[] be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being

---

hearing officer's decision. *See* ECF No. 143-1.

of the inmates who consume it." *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) (internal citation omitted). In his affidavit, Defendant Urch attests that "a licensed dietician approved the menu for the BMU and the meals provided to inmates housed therein either meet or exceed the requirements set forth in the 'Minimum Standards for Local Detention Facilities in South Carolina.'" ECF No. 93-2 ¶ 7. Plaintiff alleges that he has not received a "hot" meal and the diet he received while at SCDF has caused him to lose weight. ECF No. 1 at 3-4. However, Plaintiff is only entitled to "adequate food." Here, the evidence indicates that Plaintiff has received adequate, although not necessarily "hot" food. The undersigned notes Plaintiff's allegation of weight loss. However, Plaintiff's health has been closely monitored and there is no indication that his health is in danger. Accordingly, the undersigned recommends Defendants' Motion be granted as to Plaintiff's claim that he has been deprived of adequate food because it does not rise to the level of a constitutional violation.

      b.)    Shoes, Socks, and a Mattress

Defendants argue that all inmates housed in Pod 5 "are intentionally afforded less privileges than those inmates in the general population in an effort to bring their obstreperous behavior in compliance with SCDF rules and regulations." ECF No. 93-1 at 9-10. Here, Plaintiff maintains that he was denied shoes, socks, and a mattress while he was housed in the BMU. ECF No. 1 at 3-4. Specifically, Plaintiff maintains that BMU conditions use corporal punishment to change behavior. *Id.* at 4.

It appears Plaintiff is alleging that the conditions of his confinement in BMU amount to

---

[5] In Defendants' previously filed Motion for Summary Judgment, they analyze Plaintiff's conditions of confinement claims under the Eighth Amendment standard, and the undersigned relies on that analysis here. *See* ECF No. 93.

cruel and unusual punishment. As a general matter, the Eighth Amendment prohibits punishments that "are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' or which involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 102–103 (1976). It is well settled that the "unnecessary and wanton infliction of pain" imposed "maliciously and sadistically" by prison officials "for the very purpose of causing harm" states a claim under the Eighth Amendment. *Whitley v. Albers,* 475 U.S. 312, 319–21 (1986). However, it is also recognized that a prison's internal security is "peculiarly a matter normally left to the discretion of prison administrators" and they should be given "wideranging deference" regarding the actions necessary "to preserve internal order and discipline and to maintain institutional security." *Id.* at 321–22.

Here, Defendant Urch attests that Plaintiff was placed in "pod 5 for the majority of his incarceration" based on "the nature of his charges, his repeated behavioral issues, and his inability to follow SCDF rules governing inmate behavior. . . ." ECF No. 93-2 ¶ 3. Defendant Urch avers that inmates housed in pod 5 are in "single bed cells to reduce friction and control behavior." *Id.* Further, Defendant Urch represents: "Inmates are administratively housed in this pod based on special needs, behavior, criminal charges, disciplinary offenses, or on any other basis needed to help maintain internal order and security." *Id.* Additionally, Defendant Urch represents that Plaintiff was also housed in the BMU for part of his time spent at SCDF "due to his unruly behavior." *Id.* Defendants attached Plaintiff's disciplinary records to Defendant Urch's affidavit as supporting documentation. *See* ECF No. 150-5 in C/A 5:15-cv-04285-MGL-KDW.

Defendant Urch also represents:

> [S]trip search[s] [occur] when [inmates are] housed or rehoused within the BMU, [and] any strip searches conducted are solely for institutional security and for the health, safety and well-being of the SCDF's officers and inmates, in an effort to make sure that no inmate is smuggling weapons or contraband into that portion of the facility.

*Id.* ¶ 6. Additionally, Defendant Urch attests that the "search is conducted outside the presence of other inmates and only by the number of officers needed in order to make sure the search is conducted in a safe and proper manner." *Id.*

Plaintiff has failed to offer independent evidence that demonstrates Defendants acted with deliberate indifference to deprive him of a basic human need. Rather, the evidence demonstrates that Plaintiff was placed in certain areas of SCDF in response to Plaintiff's own actions and his violations of SCDF policies. The Supreme Court has instructed that prison officials should be given "wideranging deference" regarding the actions necessary "to preserve internal order and discipline and to maintain institutional security. *Whitley,* 475 U.S. at 321–22. Additionally, short periods of deprivation of property to do not rise to a constitutional rights violation. *See Joyner v. Patterson*, No. 0:13-cv-2675-DCN, 2014 WL 3909531, at *6 (D.S.C. Aug. 11, 2014) ("However, numerous courts have held that depriving an inmate of a mattress for short periods of time does not constitute cruel and unusual punishment."). Accordingly, the undersigned finds that Plaintiff has failed to state a claim for cruel and unusual punishment in violation of the Fourteenth Amendment. Therefore, the undersigned recommends granting Defendants' Summary Judgment Motion on Plaintiff's cause of action for Fourteenth Amendment constitutional rights violations, including but not limited to Plaintiff's allegations that Defendants deprived him of socks, shoes, and a mattress.

### c.) June 16, 2015 incident

Finally, Defendant Urch addresses Plaintiff's allegations concerning a June 16, 2015 incident. In his Complaint, Plaintiff alleges that on June 16, 2015, Defendants stripped him, placed a bag over his head, and paraded him around the pod with the bag over his head while he was only wearing paper underwear. ECF No. 1 at 4. Plaintiff represents that video footage will demonstrate that his allegations are true. *Id.* In support of their Summary Judgment Motion, Defendants have provided the court with video footage from the incident in question as an attachment to Defendant Urch's affidavit. In his affidavit Defendant Urch represents that he has reviewed the videos from the incident in question, officers' reports, and arrest warrants issued against Plaintiff based on his actions from June 16, 2015. ECF No. 93-2 ¶ 5. Defendant Urch opines that the video and written documentation confirm that Plaintiff "was acting out and repeatedly threatened the safety of the Officers." *Id.* Further, Defendant Urch attests that "[a]t no point do the videos show [Plaintiff] with a bag over his head and being paraded around the pod with a bag over his head in paper underwear as alleged in his Complaint." *Id.* The undersigned has reviewed the video footage submitted from June 16, 2015. The video depicts Plaintiff shouting at officers, using profane language, threatening officers, and punching his fist against the cell door. At one point in the video, Plaintiff tells an officer: "you will be terminated."

Again, the undersigned finds Plaintiff has failed to offer independent evidence that demonstrates Defendants "maliciously and sadistically" or "for the very purpose of causing harm" punished Plaintiff by stripping him, placing a bag over his head, or parading him around the pod with the bag over his head while he was only wearing paper underwear. Rather, the evidence demonstrates Plaintiff threatened the safety of officers on June 16, 2015. Accordingly, the undersigned finds that Plaintiff has failed to state a claim for cruel and unusual punishment in

violation of the Fourteenth Amendment concerning the June 16, 2015 incident. Therefore, the undersigned recommends granting Defendants' Summary Judgment Motion on Plaintiff's cause of action for Fourteenth Amendment constitutional rights violations.

        d.)      Shower

Plaintiff alleges he was forced to shower while wearing handcuffs. ECF Nos. 1 at 5; 143 at 5. However, Plaintiff has failed to allege anything more than feelings of frustration occurred as a result. Allegations of "routine discomfort" are not enough to sustain a constitutional violation claim in this context. *See Strickler,* 989 F.2d at 1380 n. 3 (*quoting Hudson,* 503 U.S. at 9); *see Mitchell v. Martin,* No. 87–6592, 1987 WL 30244, at *1–2 (4th Cir. Dec. 17, 1987); *Weems v. St. Lawrence,* No. CV409–065, 2009 WL 2422795, at *2–3 (S.D. Ga. Aug. 6, 2009). Therefore, the undersigned recommends granting Defendants summary judgment concerning Plaintiff's due- process-violation cause of action for being forced to shower while wearing handcuffs. *Bolding v. Virginia Beach Corr. Ctr.*, No. 3:11CV105-HEH, 2012 WL 1438815, at *3 (E.D. Va. Apr. 25, 2012) (recommending dismissing a plaintiff's claim for showering in restraints because Plaintiff only alleged routine discomfort and failed to allege that he "sustained any injury as result of showering in restraints").

        3.      Qualified Immunity

Previously, Defendants argued they are entitled to dismissal of this case because they are shielded by qualified immunity. ECF No. 93-1 at 11. Though Defendants deny that "any of the policies, procedures, and practices complained of by Plaintiff give rise to a constitutional deprivation," they maintain that "qualified immunity insulates [them] from liability in this suit." *Id.*

The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court shows that these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Defendants did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the exercise of their respective professional judgments. Thus, to the extent the district judge finds

17

that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

4. Respondeat Superior

Previously, Defendants argue that Defendant Urch cannot be held liable under a theory of respondeat superior. ECF No. 93-1 at 12. Specifically, Defendants maintain that "[t]o the extent that Plaintiff is alleging that Defendant Urch is subject to supervisory liability, such allegations fail as a matter of law." *Id.*

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior,* but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn,* 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted), *overruled in part on other grounds by Farmer,* 511 U.S. at 837. To successfully pursue such a theory, Plaintiff must demonstrate that he faced a pervasive and unreasonable risk of harm from a specified source, and that the supervisor's corrective inaction amounted to deliberate indifference or tacit authorization of the offensive practices. *Id.; see also Slakan v. Porter,* 737 F.2d 368, 373 (4th Cir. 1984).

Plaintiff's Complaint alleges that some Defendants acted with deliberate indifference or subjected him to cruel and unusual punishment in violation of his constitutional rights. However, Plaintiff failed to show facts that establish any of the Defendants acted with indifference or malice. Therefore, the undersigned finds that Plaintiff has failed to establish a causal link between any action or inaction on the part of the SCDF personnel and Defendant Urch. To the extent Plaintiff attempts to rely on the doctrine of supervisory liability to hold Defendant Urch

liable on any of his claims, the undersigned recommends that Defendant Urch be granted summary judgment.

5. State Law Causes of Action

As previously indicated, Plaintiff amended his Complaint and to allege state-law causes of action for intentional infliction of emotional distress, defamation, and invasion of privacy. *See* ECF Nos. 44, 87. If the court accepts this R&R, the only claims within the court's original jurisdiction will be dismissed. Without Plaintiff's § 1983 claims, Plaintiff's sole remaining causes of action are based on the court's supplemental jurisdiction. Section 1367(c)(3) of Title 28 of the United States Code provides that the district courts "may decline to exercise supplemental jurisdiction [as to claims forming the same case or controversy as those within the court's original jurisdiction] if the district court has dismissed all claims over which it has original jurisdiction[.]" Trial courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (district court did not abuse its discretion in declining to retain jurisdiction over the state law claims); *See also, e.g., United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966); *Addison v. Chesterfield Cty. Sheriff Dep't*, No. 4:12–CV–02543–RBH, 2013 WL 6799223, at *3 (D.S.C. Dec. 20, 2013) (declining to exercise supplemental jurisdiction over state-law claims upon granting summary judgment as to § 1983 claim); *Wauben v. Protega (USA), Inc.*, No. 2:05–2780–PMD–RSC, 2007 WL 775614, at *14 (D.S.C. Mar. 9, 2007) (same in Title VII matter). Here, the undersigned recommends the court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismiss those claims without prejudice to them being filed in state court, thus ending this action.

B. Plaintiff's Motions for Summary Judgment, ECF No. 121, 142

Plaintiff filed a Motion for Summary Judgment on January 12, 2017. ECF No. 121. There, Plaintiff argues that he was denied Fourteenth Amendment due process as a matter of law because Defendants failed to comply with SCDF's written policies and the mandates of *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Id.* Later, on April 5, 2017, Plaintiff filed another Motion for Summary Judgment. ECF No. 142. There, Plaintiff restates the holdings in the *Dilworth* case as well as several allegations in his Complaint. *See id.* Based on the above analysis, the undersigned finds that Plaintiff was afforded the required due process as a matter of law while he was housed as a pretrial detainee. Therefore, based on these findings, the undersigned declines to recommend that either of Plaintiff's Motions for Summary Judgment be granted.

V. Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Amended Motion for Summary Judgment, **ECF No. 138, be granted**, Plaintiff's Motions for Summary Judgment, **ECF Nos. 121, 142, be denied**, and this matter be ended in this court.

IT IS SO RECOMMENDED.

May 22, 2017  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**